# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

| | |
|---|---|
| MARK A. WYRICK, ADC # 085456 | * |
| | * |
| Plaintiff, | * |
| v. | * |
| | *   No. 4:14CV00526-SWW-JJV |
| JOHNSON, Doctor, | * |
| Pulaski County Detention Center | * |
| | * |
| Defendant | * |

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Susan Webber Wright. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a new hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

1.   Why the record made before the Magistrate Judge is inadequate.

2.   Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

1

3. The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

### I. INTRODUCTION

Mark A. Wyrick ("Plaintiff") brought this action alleging that Dr. Carl Johnson exhibited deliberate indifference to his serious medical needs while he was incarcerated at the Pulaski County Regional Detention Center ("PCRDC"). (Doc. No. 2 at 6-8.) Now, Dr. Johnson has moved for summary judgment (Doc. No. 34) and Plaintiff has responded (Doc. No. 37).

### II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825

(8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III.    BACKGROUND

Plaintiff suffered a gunshot wound to his arm while fleeing arrest on August 20, 2013. (Doc. No. 36 ¶¶ 1-2.) He was treated at University of Arkansas for Medical Sciences ("UAMS") and discharged to the jail on August 24, 2013. (*Id*. ¶¶ 3-6.) At discharge Plaintiff was prescribed: acetaminophen-oxycodone, aspirin, cleocin hydrochloride, famotidine, indomethacin, and keppra. (*Id*. ¶ 5.)

On September 8, 2013, Plaintiff filed a grievance contesting his assignment to administrative segregation and the adequacy of his medical treatment. (*Id*. ¶ 11.) Notably, he alleged he had not been seen by Dr. Johnson and had not been given a "treatment plan." (Doc. No. 36-7.) Prison staff responded that he was scheduled for the next available clinic appointment. (Doc. No. 36-8.)

Plaintiff filed a second grievance on September 13, 2013, wherein he alleged he waited eighteen days to see Dr. Johnson. (Doc. No. 36-10.) But he also states he finally saw Dr. Johnson on September 11, 2013, but was not afforded competent care during that encounter. (*Id*.) Prison officials responded by finding Plaintiff's medical needs had been adequately addressed. (Doc. No. 36-11.)

Plaintiff filed this suit on September 4, 2014. (Doc. No. 2.) He alleges Dr. Johnson failed

3

to provide him with the medication which UAMS prescribed and his unsanitary segregation cell posed a serious risk of infection. (*Id*. at 4-7.)

## IV. ANALYSIS

Pursuant to his Motion, Dr. Johnson argues: (1) he is entitled to qualified immunity; (2) Plaintiff has failed to allege any viable official capacity claims; (3) he was not deliberately indifferent to Plaintiff's medical needs; and (4) he was not deliberately indifferent to Plaintiff's conditions of confinement. For his part, Plaintiff has offered a short response asserting that genuine issues of fact persist and summary judgment should be denied on that basis. (Doc. No. 37.) After careful review of the pleadings and the record, I conclude Dr. Johnson is entitled to summary judgment.

### A. Qualified Immunity

Qualified immunity protects officials who acted in an objectively reasonable manner and shields a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were

4

unlawful. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).[1] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009).[2]

At the outset I must determine whether Dr. Johnson, as a private individual, is entitled to qualified immunity. He claims he is the owner and only employee of Correctional Healthcare, Inc., which has contracted with PCRDC to provide certain limited medical services to inmates. (Doc. No. 36-17 ¶ 3.) Qualified immunity protects "government officials performing discretionary functions." *Rush v. Perryman*, 579 F.3d 908, 913 (8th Cir. 2009) (internal quotations and citations omitted). "Private individuals, however, are not necessarily shielded from liability under § 1983 by the immunity afforded public officials." *Domina v. Van Pelt*, 235 F.3d 1091, 1096 (8th Cir. 2000). Other courts have declined to extend qualified immunity to privately employed medical personnel. *See Hinson v. Edmond*, 192 F.3d 1342, 1345-47 (11th Cir. 1999) (qualified immunity not applicable to a privately employed prison physician); *Jensen v. Lane County*, 222 F.3d 570, 576 (9th Cir. 2000) (concluding that a psychiatrist at private hospital was not automatically entitled to qualified immunity simply because he was a "state actor" for the purposes of section 1983); *Harrison v. Ash*, 539 F.3d 510, 525 (6th Cir. 2008) (declining to extend qualified immunity to nurses employed by Correctional Medical Services). Dr. Johnson has not addressed this question or explained how his

---

[1] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Nelson v. Correctional Medical Services*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. at 236).

[2] While I am required to weight the facts in Plaintiff's favor, I need do so only so long as "as long as those facts are not so blatantly contradicted by the record that no reasonable jury could believe them." *Handt v. Lynch*, 681 F.3d 939, 945 (8th Cir. 2012) (citation omitted).

particular relationship with the PCRDC entitles him to qualified immunity. As such, I decline to recommend dismissal of Plaintiff's claims on this basis. *See Harrington v. City of Council Bluffs, Iowa*, 678 F.3d 676, 679 (8th Cir. 2012) (citation omitted) ("Qualified immunity is an affirmative defense for which the defendant carries the burden of proof."). If Dr. Johnson has additional argument or evidence which establishes he is entitled to qualified immunity, he may include it in his objections to this recommendation.

### B. Plaintiff's Medical Claims

The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes.[3] *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (deliberate indifference includes intentional interference with prescribed treatment; inadvertent or negligent failure to provide adequate medical care cannot be said to constitute "unnecessary and wanton infliction of pain"). "Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." *Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995). However, "[a] showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions." *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

Evidence shows that on August 25, 2013, Dr. Johnson ordered continuation of the

---

[3] Plaintiff has not specified, but his allegations appear to indicate that he was a pre-trial detainee during the period relevant to this suit. Regardless of his status, deliberate indifference is the appropriate standard by which to weigh his claims. *See Hartsfield v. Colburn*, 491 F.3d 394, 396 (8th Cir. 2007).

medications Plaintiff was prescribed at UAMS. (Doc. No. 36-5.)[4] Plaintiff concedes these orders were issued, but argues they were not followed by jail staff. (Doc. No. 37 at 3-4.) He also contends that he brought this failure to Dr. Johnson's attention, but was ignored until he filed a grievance on the matter. (*Id*. at 4.) First, Dr. Johnson states he had no control or responsibility over the disbursement of prescribed medication. (Doc. No. 36-17 ¶ 4.) That responsibility fell to PCRDC employees. (*Id*.) Second, there is no evidence that Plaintiff actually brought this matter to Dr. Johnson's attention between the issuance of the medication order on August 25, 2013, (Doc. No. 36-5) and the filing of Plaintiff's first grievance on September 8, 2013. (Doc. No. 36-7.)[5] Plaintiff's second grievance alleges he first saw Dr. Johnson on September 11, 2013. (Doc. No. 36-10.) Finally, it bears noting that the deliberate indifference standard demands "proof of a reckless disregard of the known risk." *Crow v. Montgomery*, 403 F.3d 598, 602 (8th Cir. 2005). The record, weighted in Plaintiff's favor, does not permit the conclusion that Dr. Johnson recklessly disregarded his need for pain medication.

Plaintiff's other claims against Dr. Johnson also fail to establish a viable claim for deliberate indifference. He alleges Dr. Johnson failed to take his vital signs on September 11, 2013. (Doc. No. 2 at 7.) He also claims Dr. Johnson was deliberately indifferent to the risk of infection caused by his unclean cell. (*Id*. at 7-8.) Finally, he alleges he lacked antibiotics and fresh bandages during his

---

[4]This document refers to one "Tony Hill" which Defendant asserts is one of the aliases Plaintiff provided to medical providers. (Doc. No. 35 n. 1.) Plaintiff has not disputed this assertion.

[5]Plaintiff contends that, even after this meeting, he was not afforded the medication oxycodone. (Doc. No. 37 at 4.) His Complaint alleges that it is used to treat "mild to moderate pain" (Doc. No. 2 at 2.) The fact that UAMS may have prescribed this medication does not automatically entitle Plaintiff to receive it. *See Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996) ("Prisoners do not have a constitutional right to any particular type of treatment."). Absent any plausible allegation that the failure to receive this medication seriously affected his health or recovery, I conclude that no claim for deliberate indifference should proceed on this basis alone.

incarceration at the PCRDC. (*Id*. at 5.) Plaintiff has failed to establish that an injury resulted, however. *See Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008)("Because a § 1983 action is a type of tort claim, general principles of tort law require that a plaintiff suffer some actual injury before he can receive compensation."); *see also Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006) (holding that a claimant must prove that defendants' unconstitutional actions in fact caused his injuries). Here, Plaintiff has not established that the failure to take his vital signs or the lack of clean bandages actually harmed him. Similarly, he claims his wounds "could very easily have become infected," but he provides no evidence that such infection actually occurred. (Doc. No. 2 at 4.) To the contrary, Dr. Johnson states Plaintiff's injury "healed normally and without complication." (Doc. No. 36-17 ¶ 9.)

### C. Plaintiff's Conditions of Confinement Claim

To the extent Plaintiff brings a conditions of confinement claim[6] which is not premised solely on his medical care, that claim also fails to amount to deliberate indifference. Dr. Johnson has stated he had no responsibility for or involvement in determining inmate cell assignments. (*Id*. ¶ 10.) He argues that authority was vested in the PCRDF classification board, of which he is not a member. (*Id*.) Plaintiff has not offered evidence or substantive argument to refute these assertions. Rather, he states Dr. Johnson should have told prison officials to place him in the prison hospital ward. (Doc. No. 37 at 3.) As noted above, however, Plaintiff has not shown that he suffered any injury as a result of his cell assignment. Given that Dr. Johnson had no authority or influence over Plaintiff's cell assignment, no reasonable finder of fact could conclude that he was deliberately indifferent in

---

[6]If Plaintiff was a pre-trial detainee at this time, his claim would be analyzed under the Fourteenth Amendment Due Process Clause, not the Eighth Amendment. *Owens v. Scott County Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003). Regardless of his status, however, deliberate indifference remains the proper standard. *Id*.

failing to address Plaintiff's conditions of confinement.

    **D.    Official Capacity Claims**

Plaintiff's official capacity allegations are, in essence, claims against Pulaski County itself. *Liebe v. Norton*, 157 F.3d 574, 578-9 (8th Cir. 1998). In order to state a successful claim against a county defendant, a plaintiff must establish that some county policy or "persistent and widespread" unconstitutional practice was the cause of his alleged injury. *Jane Doe "A" v. Special School Dist.*, 901 F.2d 642, 646 (8th Cir. 1990). Plaintiff has failed to allege the existence of such a custom or practice in the instant case. Accordingly, his official capacity claims must be dismissed.

**V.    CONCLUSION**

IT IS, THEREFORE, RECOMMENDED that Defendant Johnson's Motion for Summary Judgment (Doc. No. 34) be GRANTED in part and DENIED in part.

    A.    Dr. Johnson should be denied the protections afforded by qualified immunity.

    B.    Plaintiff's individual capacity claims against Dr. Johnson should be DISMISSED with prejudice because the record establishes that Dr. Johnson was not deliberately indifferent to his medical needs or conditions of confinement.

    C.    Plaintiff's official capacity claims against Dr. Johnson should be DISMISSED with prejudice because he has failed to establish that any policy or practice of Pulaski County caused his alleged injuries.

Dated this 24th day of September, 2015.

                                                      JOE J. VOLPE
                                                      UNITED STATES MAGISTRATE JUDGE